KAREN A. OVERSTREET
Chief Bankruptcy Judge
United States Courthouse
700 Stewart St., Suite 6310
Seattle, WA 98101
206-370-5330

IN THE BANKRUPTCY COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re | Chapter 7 |
| DOUGLAS SIMONSON and KAREN SIMONSON, | Case No. 04-15846 |
| Debtors. | |
| MICHAEL MCCARTY, solely in his capacity as Trustee for the estate of Douglas and Karen Simonson, | Adversary No. 06-01235 |
| Plaintiff, | **NOT FOR PUBLICATION** |
| vs. | |
| GLOBAL FINANCIAL SOLUTIONS, LLC., et al. | MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR SANCTIONS AGAINST HERMAN RECOR ARAKI KAUFMAN SIMMERLY & JACKSON PLLC |
| Defendants. | |

This matter came before the Court on the Trustee's Motion
for Sanctions for Violations of Discovery Rules ("Sanctions
Motion"), filed by the trustee, Michael McCarty (the
"Trustee"), against Herman Recor Araki Kaufman Simmerly &
Jackson PLLC ("Herman Recor"), prior counsel herein for
defendants Michael and Rowan Levenhagen, Mark and Sylvia Laing,
and David and Nancy Laning (collectively, the "Transferee
Defendants"). The Sanctions Motion was originally set for

MEMORANDUM DECISION - 1

hearing on June 13, 2008, but the Court continued the hearing at Herman Recor's request to July 11, 2008.  The Court heard oral argument on the Sanctions Motion on that date and asked the parties for supplemental materials.  Subsequent to the hearing, the Trustee submitted a Supplemental Declaration in support of the Sanctions Motion (Docket no. 368).  Herman Recor submitted the following supplemental pleadings which the Court has considered in connection with this ruling:

Declaration of Zeshan Q. Khan Regarding Declarations of Robert Jackson, Patti Jackson and Dave Carlile (Docket no. 370)

Declaration of Robert Jackson In Response to Declarations of Robert Dainard and Marc Stern (Docket no. 371)[1]

Declaration of Patti Jackson (Docket no. 372)

Declaration of Dave Carlile (Docket no. 374)

Declaration of Cynthia A. Kuno in Support of Herman Recor Araki Kaufman Simmerly & Jackson PLLC's Memorandum Regarding Trustee's Reasonable Fees Related to Discovery Omissions (Docket no. 375)

Second Declaration of Cynthia A. Kuno in Support of Herman Recor Araki Kaufman Simmerly & Jackson PLLC's Memorandum Regarding Trustee's Reasonable Fees Related to Discovery Omissions (Docket no. 376)

Third Declaration of Cynthia A. Kuno in Support of Herman Recor Araki Kaufman Simmerly & Jackson PLLC's Memorandum Regarding Trustee's Reasonable Fees Related to Discovery Omissions (Docket no. 377)

---

[1]
     The declarations of Robert Jackson, Patti Jackson, and Dave Carlile listed above were filed in response to allegations in the Trustee's Reply brief (Docket no. 359) regarding a real estate transaction in Chelan, Washington involving Mr. Jackson and Robert Dainard.  The Court does not believe this transaction is germane to the issues raised in the Sanctions Motion and accordingly has not considered the declarations relating to the transaction.

MEMORANDUM DECISION - 2

Declaration of Cynthia A. Kuno re After-Hours Filing of
Memorandum Regarding Trustee's Reasonable Fees Related to
Discovery Omissions (Docket no. 379)

Memorandum of Herman Recor Araki Kaufman Simmerly & Jackson
PLLC Regarding Trustee's Reasonable Fees Related to
Discovery Omissions (Docket no. 378)

Correspondence dated September 15, 2008, from Cynthia Kuno
(Docket no. 382)

For the following reasons, the Court will order Herman
Recor to pay compensatory sanctions to the Trustee in the sum
of $183,359.43 pursuant to Fed.R.Civ.P. 26(g)(3).

## I.  JURISDICTION

The Court has jurisdiction of this matter pursuant to 28
U.S.C. § 157(a) and (b) and § 1334(a) and (b).  This is a core
proceeding under 28 U.S.C. § 157(b)(2)(A).

## II.  BACKGROUND

A.   <u>Summary of the Transactions at Issue.</u>

Douglas and Karen Simonson (the "Debtors") filed a
chapter 7 petition on April 29, 2004, Case no. 04-15846 (the
"Main Case").  The Trustee commenced this adversary proceeding
on April 29, 2006, seeking money or the return of property of
the estate allegedly transferred by the Debtors to the
Transferee Defendants.  As of the petition date, the Debtors
owned two pieces of real property on Lake Washington, their
residence located at 11609 Holmes Point Drive, Kirkland,
Washington (the "11609 Property") and an adjacent rental
residence located at 11615 Holmes Point Drive N.E., Kirkland,
Washington (the "Rental Property").  On June 30, 2004, the
Debtors filed a motion in the Main Case to compel the Trustee

MEMORANDUM DECISION - 3

to abandon both properties on the grounds that the properties
lacked equity for the creditors and were burdensome to the
estate.  In support of the motion, counsel for the Debtors
filed a declaration attached to which was the first page of an
appraisal valuing the 11609 Property at $820,000, the Debtors'
Schedule D showing secured liens against the 11609 Property in
excess of the value of the property, and a copy of a purchase
and sale agreement pursuant to which Global Financial Solutions
("GFS") would purchase the 11609 Property from the Debtors for
$800,000.  The Court entered an unopposed order of abandonment
on July 13, 2004 abandoning both properties (the "Abandonment
Order").  The Debtors' transfer of the Rental Property
subsequent to the entry of the Abandonment Order is not
relevant to the issues in the Sanctions Motion and therefore
will not be described in detail.  The Debtors' transfers of the
11609 Property, however, are relevant and will be described in
detail below.

The 11609 Property was initially transferred by the Debtors
to the Levenhagens in November of 2004, about four months after
entry of the Abandonment Order and seven months after the
petition date.  Prior to filing bankruptcy, however, the
Debtors had filed an application for a short plat and boundary
line adjustment affecting both the 11609 Property and the
Rental Property.  The application was approved by the county
after the Abandonment Order was entered.  Pursuant to the
approved short plat, 1,745.8 square feet of property from the
Rental Property was moved to the 11609 Property and the 11609

MEMORANDUM DECISION - 4

Property was then divided into two lots.  The new lot was described as 11611 Holmes Point Drive, Kirkland, Washington (the "1611 Property").  The short plat was completed on June 1, 2005.  The short plat application was not disclosed in the Debtors' bankruptcy papers or in the Debtors' motion for authority to abandon the 11609 Property.

In a series of transactions that took place in June of 2005 involving the Debtors' wholly-owned limited liability company, Network Builders, LLC ("Network"), the Debtors transferred Network to the Levenhagens, the Levenhagens deeded the 11609 Property to Network, and then the Levenhagens transferred Network (which then owned the 11609 Property) back to the Debtors.  The day after the Levenhagens transferred Network back to the Debtors, Mr. Simonson executed a deed of trust on behalf of Network in favor of Daniels Capital, LLC ("Daniels Capital") in exchange for $167,775.56.  On December 9, 2005, Network transferred the 11609 Property by quit claim deed to the Laings and on December 22, 2005, Network transferred the 11611 Property by quit claim deed to David Laning.

With the foregoing summary of the transactions at issue, the Court turns to the Trustee's specific contentions.

B.  The Adversary Proceeding.

The Trustee's initial complaint ("Complaint") was filed on April 29, 2006, and named as defendants GFS, David Langford, Mark Hodges & Associates, Daniels Capital, and the Transferee

MEMORANDUM DECISION - 5

Defendants.[2]  The Debtors were not initially named as defendants
in the Complaint.  The Complaint alleged that despite the
representations to the Court that the 11609 Property was being
sold to GFS for $800,000 pursuant to a short sale, on July 30,
2004, the Levenhagens had entered into a Specific Buying
Agreement (the "SBA") pursuant to which they agreed to purchase
the 11609 Property as nominees for GFS for not more than $1.2
million.  Pursuant to the terms of the SBA, the Levenhagens
were to use their credit to provide financing for the purchase
of the 11609 Property and, subsequent to the purchase, GFS was
to pay the Levenhagens $27,972 to hold title to the 11609
Property for no more than 18 months.  During that 18-month
period, GFS was to make payments on the Levenhagens' mortgage
debt against the 11609 Property.

    The Complaint stated at paragraph 4.9: "Upon information
and belief the Trustee alleges that the debtors knew of and
were involved in the preparation and execution of the 11609
SBA."  The Complaint further alleged that escrow records
revealed that on November 24, 2004 there was a "paper" sale of
the 11609 Property from the Debtors to GFS, but the King County
property records reflected only a sale from the Debtors to the
Levenhagens for $1 million.  Paragraph 4.31 of the Complaint
stated "Upon information and belief the Trustee alleges that
the Levenhagens allowed the debtors and GFS to use their credit
and their name to effectuate a fraud upon the Bankruptcy Court

_____

    [2]  Other defendants are named in the action but are not
relevant to the Sanctions Motion.

MEMORANDUM DECISION - 6

in exchange for a payment of $27,972.00 as set forth in the 11609 SBA." The Complaint set out the various transfers of the 11609 Property and the 11611 Property which are summarized above. It was upon the foregoing allegations that the Trustee based his Complaint to vacate the Abandonment Order and sought a recovery from the Transferee Defendants under Bankruptcy Code §§ 542, 543, 549, 550, and 551.

The Levenhagens retained Herman Recor in June of 2006 at the suggestion of Mr. Simonson, who indicated that Herman Recor was familiar with the "GFS situation." Declaration of Michael Levenhagen in Support of Plaintiff's Motion for Sanctions Against Herman Recor Araki Kaufman Simmerly & Jackson, PLLC for Discovery Violations (Docket no. 329)("Levenhagen Decl."). Shortly thereafter, at the request of Herman Recor attorney Robert Jackson, on June 20, 2006, Mr. Levenhagen sent Herman Recor a 25 page fax which contained a summary of events related to the 11609 Property and short answers to specific statements in the Trustee's Complaint. *Id.* Mr. Levenhagen sent a second fax to Herman Recor on June 20, 2006, which consisted of 25 pages including the purchase and sale agreement between the Levenhagens and Network, the quit claim deed transferring the 11609 Property, and the Network purchase and sale agreement transferring Network back to the Debtors. *Id.* By email on June 22, 2006, Mr. Jackson requested that Mr. Levenhagen send him any documents related to closing such as escrow instructions, loan documents, etc. Levenhagen Decl., Ex. 1. On June 23, 2006, Mr. Levenhagen sent "substantial documents"

MEMORANDUM DECISION - 7

related to the 11609 Property to Herman Recor via Federal
Express. *Id.* at ¶ 10. This documentation included a copy of
the Global Financial Solutions Buying Partner General Terms of
Agreement (the "General Buying Partner Agreement"), on which
Mr. Levenhagen had written "Doug Simonson" on page 5 near the
signature line to indicate that Mr. Simonson was the
Levenhagens' contact at GFS. *Id.* at 11. Mr. Levenhagen also
wrote in his and his wife's names as the buying partners. A
copy of the marked-up General Buying Partner Agreement that
Mr. Levenhagen sent to Herman Recor on June 23, 2006 is
attached to the Levenhagen Decl. as Exhibit 12.

On July 17, 2006, Herman Recor entered its appearance in
the adversary on behalf of each of the Transferee Defendants.
On July 21, 2006, Herman Recor also filed a motion to dismiss
under Rule 12(b)(6), Fed.R.Civ.P., on behalf of these
defendants. The Trustee opposed the motion; and at the hearing
on September 1, 2006, the Court denied the motion and ordered
the Trustee to join the Debtors in the action. On September 6,
2006, the Trustee filed an amended complaint adding the Debtors
as additional defendants.

On September 27, 2006, the Trustee served on Herman Recor
the First Request for Production of Documents for Michael and
Rowan Levenhagen (the "Levenhagen Requests"). At the same
time, the Trustee also served on Herman Recor the First Request
for Production of Documents for Mark and Sylvia Laing ("Laing
Requests") and the First Request for Production of Documents
for David and Nancy Laning ("Laning Requests") (together with

MEMORANDUM DECISION - 8

the Levenhagen Requests, hereinafter referred to as the "First Requests"). *See* Exs. 1, 2, 3 to Declaration of Denice Moewes in Support of Trustee's Motion for Sanctions, Docket no. 330 ("Moewes Decl."). The Levenhagen Requests sought production of all documents in the Levenhagens' possession relating to GFS, David Langford, the Laings, the Debtors, and Network, including emails, letters and correspondence. *Id.*, Ex. 1.

Although answers to the First Requests were due on October 27, 2006, it was not until October 26, 2006 that Mr. Levenhagen received an email from Robert Jackson indicating that the Trustee had asked for copies of any correspondence between the Levenhagens and the Debtors, including emails. Levenhagen Decl. at ¶12. Mr. Levenhagen compiled all responsive emails through January of 2006. Because the 11609 Property had been sold in December of 2005, Mr. Levenhagen did not assemble emails subsequent to that date believing they would not be responsive. Mr. Levenhagen also did not produce any emails referencing Network because Mr. Jackson had not requested those. However, the Trustee had specifically requested all documents mentioning the Simonsons or Network in Request for Production No. 2 of the Levenhagen Requests. Moewes Decl., Ex. 1.

On October 30, 2006, Mr. Levenhagen sent the emails and correspondence contained in Exhibits 3 and 4 to the Levenhagen Decl. to Mr. Jackson by Federal Express. Levenhagen Decl., ¶15. This package included 27 pages of emails and faxes that Mr. Levenhagen had previously printed (the print date shows at

MEMORANDUM DECISION - 9

the bottom of the page of each email)(Levenhagen Decl., Ex. 3),
and 66 pages of emails Mr. Levenhagen printed on October 28,
2006 (Levenhagen Decl., Ex. 4)(the foregoing emails and faxes
will hereinafter be referred to as the "November 1 2006
Documents").  Excluding duplicate emails, the November 1 2006
Documents included 119 emails and faxes.  Mr. Levenhagen never
received from Herman Recor a copy of the Levenhagen Requests
and he was never advised by anyone at Herman Recor that
additional emails or correspondence were required to be
produced.  *Id.*, ¶17.  Herman Recor did not turn over the
November 1 2006 Documents to the Trustee in response to the
Levenhagen Requests.

On October 13, 2006, Herman Recor filed a motion for
summary judgment to dismiss the Trustee's claims against the
Transferee Defendants (the "First Motion for Summary Judgment,"
Docket no. 37).  A hearing on that motion was initially set for
November 3, 2006.  On October 24, 2006, the Debtors, through
their counsel Greg Cavagnaro, also filed a motion for summary
judgment which was scheduled for hearing on November 17, 2006
(the "Debtors' Summary Judgment Motion," Docket no. 50).  As of
October 31, 2006, however, because Herman Recor had not
responded to the First Requests the Trustee sought a
continuance of the First Motion for Summary Judgment.  Moewes
Decl., Ex. 8.  In an email dated October 27, 2006, Ms. Leanne
Volz, a paralegal at Herman Recor, advised Ms. Denice Moewes,
Trustee's counsel, that she was assembling documents responsive
to the First Requests but needed additional time to produce the

MEMORANDUM DECISION - 10

1   documents because Mr. Stephen Araki, lead counsel for the

2   Transferee Defendants, was out of the country.  The First

3   Motion for Summary Judgment was continued to November 17 and

4   finally to December 1, 2006.  Similarly, the hearing on the

5   Debtors' Summary Judgment Motion was continued to December 1,

6   2006.  As of November 6, 2006, Ms. Moewes was still seeking a

7   response to the First Requests from Mr. Araki.  *See* 11/6/06

8   email from Moewes to Araki, Moewes Decl., Ex. 9.

9       On November 7, 2006, the Trustee finally received the

10  Levenhagens' response to the First Requests (the "First

11  Response").  Moewes Decl., ¶ 13, Ex. 10.  The First Response

12  included general objections that the First Requests were over

13  broad and "invasive of the attorney client privilege," but

14  there was no indication in the First Response that documents

15  had been withheld on the ground of privilege or for any other

16  reason.  *Id.*, Ex. 10.  In response to Request for Production

17  No. 2, the First Response stated: "Defendants are producing

18  documents that are responsive to this request that have been

19  located to date.  Defendants are continuing to look for any

20  additional documents that may be responsive and will provide

21  any additional records located."  *Id.*, Ex. 10.  None of the

22  November 1 2006 Documents were included in the documents

23  attached to the First Response.  Also missing from the response

24  were two limited liability company purchase and sale agreements

25  related to the sale of Network to the Levenhagens and the quit

26  claim deed transferring the 11609 Property from the Levenhagens

to Network.  Neither the SBA nor the General Buying Partner

MEMORANDUM DECISION - 11

Agreement were turned over.  All of these documents, including
the November 1 2006 Documents (hereinafter referred to
collectively as the "Withheld Documents"), were in the
possession of Herman Recor when the First Response was made.
At no time did Herman Recor prepare or provide to the Trustee a
privilege log indicating that documents had been withheld from
production.

Also on November 7, 2006, Herman Recor produced documents
it deemed responsive to the Laing Requests and the Laning
Requests.  Although the production in response to the Laing
Requests included a copy of the general and specific buying
partner agreement between the Laings and a company called New
Century Builders, Inc. ("New Century"), Herman Recor did not
produce similar agreements for the Lanings.  Moewes Decl., ¶¶
14, 16, Exs. 11, 12.

Because counsel for the Trustee suspected that the Lanings
were parties to a buying partner agreement, Mr. Edmund Wood,
attorney for the Trustee, left Mr. Araki a voicemail message on
November 8 or 9 of 2006 requesting production of any such
documents.  *See* Declaration of Edmond J. Wood in Support of
Trustee's Motion for Sanctions Against Herman Recor for
Discovery Violations, filed April 22, 2008, Docket no. 327.

During the same time period, early November 2006,
Ms. Moewes had been attempting to schedule the depositions of
the Transferee Defendants.  She was reluctant to schedule the
depositions until she was satisfied that all relevant documents
had been produced.  Moewes Dec., Exs. 13, 14, 15.  Attached to

MEMORANDUM DECISION - 12

a November 14, 2006 email from Mr. Araki to Ms. Moewes were
copies of the first five pages of the buying partner agreement
between the Lanings and Lake Front Development, Inc. ("Lake
Front"). The signature page, however, was missing. Moewes
Decl., ¶ 22, Ex. 15. Ms. Moewes requested the signature page
in an email on November 14, 2006 and additional documents in an
email on November 15, 2007. Moewes Decl., Exs. 16, 17, 18. In
the last email, Ms. Moewes threatened to file a motion to
compel discovery responses if the relevant documents were not
produced. Finally, on November 17, 2006, Mr. Araki sent
Ms. Moewes the complete Lake Front buying partner agreement
with the signature page indicating it had been signed by
Mr. Kenny North. This was the first time the Trustee learned
of the involvement of Kenny North in the Laning transaction.
Moewes Decl., ¶¶ 28, 29. This new information came only four
days before the Trustee's response to the First Motion for
Summary Judgment was due and three weeks after the answers to
the First Requests were due.

    With the assistance of Herman Recor, Michael Levenhagen
filed a nine-page declaration in support of the First Motion
for Summary Judgment. *See* Declaration of Michael Levenhagen
filed October 13, 2005, Docket no. 37 ("First Levenhagen
Decl."). In that declaration, Mr. Levenhagen testified that
GFS initially contacted him through a person named Rob Gallert.
*Id.* at ¶ 3. Mr. Levenhagen believed that the GFS program
involved helping distressed homeowners remain in their homes
and investing in property for a fee. Mr. Levenhagen contended

MEMORANDUM DECISION - 13

that he and his wife were good faith purchasers of the 11609

Property for value and were without knowledge that the Debtors

were the sellers of the property until after the closing of the

sale.  Mr. Levenhagen further testified that his communications

with Mr. Simonson occurred only after closing in an effort to

resolve his concerns about the transaction and that he believed

the Debtors were also victims of GFS and David Langford.

Mr. Levenhagen described his transactions with Network and how,

in December of 2005, Mark Laing purchased the 11609 Property

and paid off the loans the Levenhagens had obtained to finance

their purchase of the 11609 Property.  Sixty seven pages of

documents were attached to the First Levenhagen Declaration -

the SBA, however, was not included among those documents nor

was any correspondence or emails between the Levenhagens and

the Debtors.

In the Debtors' Summary Judgment Motion the Debtors

asserted:

> The undisputed evidence shows that the Defendants
> Doug and Karen Simonson should be dismissed from
> the present litigation as they had nothing to do
> with the fraud against the banks or any other
> person in connection with the properties.  The
> proper claims to be pursued are those against
> Global Financial Solutions, Mr. Dave Langford,
> Mark Hodges & Associates and Kevin Magorien as
> these are the parties who enabled the fraud to
> occur with respect to the properties and the
> resultant harm or damage to the creditors and/or
> the banks.  The evidence is irrefutable that Doug
> and Karen Simonson received NO money from the
> sale of the properties to GFS.

Debtors' Summary Judgment Motion, 10/24/06 (Docket no. 50).

The Trustee objected to the First Motion For Summary

MEMORANDUM DECISION - 14

Judgment (Docket no. 61) and to the Debtors' Summary Judgment

Motion (Docket no. 63) contending that, notwithstanding the

assertions by the Levenhagens and the Debtors that they were

innocent victims of a scheme by GFS, the Debtors were the

ultimate beneficiaries of "these schemes...to get the [11609

Property] and lot back into the Simonson's name, or under their

control, after having successfully 'washed' the properties

through these many transfers, and providing tranches of cash to

the Simonsons at several points along the way." Trustee's

Response to First Motion for Summary Judgment, pp. 1, 2. The

Trustee further contended that Mr. Simonson was the architect

of the buying partner program and a direct participant in GFS.

Beginning on page 6 of the Trustee's response, the Trustee

described the shortcomings in the document production made by

the Transferee Defendants. Included with the documents filed

by the Trustee in support of his response were (i) a copy of

the Daniels Capital deed of trust against the 11609 Property

showing Network (by Mr. Simonson) as the grantor, Daniels

Capital as the grantee, and Herman Recor as the trustee, (ii) a

copy of the General Buying Partner Agreement, and (iii) a copy

of the SBA. Declaration of Denice Moewes in Support of

Trustee's Response to Motion for Summary Judgment, Docket no.

62 ("11/21/06 Moewes Decl."), Ex. 4. The Trustee's copy of the

General Buying Partner Agreement, which he had obtained in

discovery from Mr. Simonson, differed from the one

Mr. Levenhagen had sent to Herman Recor in that there was no

reference to "Doug Simonson" on the GFS signature line.

MEMORANDUM DECISION - 15

*Compare* Ex. 4, 11/21/06 Moewes Decl., to Ex. 12, Levenhagen

Decl. The Trustee contended that the Levenhagens were not in

good faith and that they were liable as transferees of the

11609 Property under Section 550 of the Bankruptcy Code.

At the hearing on December 1, 2006, the Court orally denied

the First Motion for Summary Judgment, ruling that: (a) the

Levenhagens were the initial transferees under

Section 550(a)(1) of the 11609 Property; (b) the Laings were

the initial transferees under Section 550(a)(1) of Network; and

(c) the Lanings were the immediate or mediate transferees of

the 11611 Property. The order on this ruling was not entered

until January 24, 2007 (Docket no. 115). In addition, the

Court orally denied the Debtors' Summary Judgment Motion.

At the hearing on December 1, the Court warned the parties

that due to statements in a number of the declarations which

described possible criminal activities, the Court was required

to refer the case to the U.S. Attorney's Office for criminal

investigation. The Court also noted on the record because that

Herman Recor appeared as the trustee on the Daniels Capital

deed of trust and on other documents, Herman Recor attorneys

might be considered fact witnesses in the case. The Court

instructed counsel for the Trustee to make an early

determination of whether she would seek to depose Mr. Araki or

other attorneys at Herman Recor so as not to prejudice the

Transferee Defendants by waiting until the trial to deal with

these issues.

Eleven days after the Court orally denied the First Motion

MEMORANDUM DECISION - 16

for Summary Judgment, the Transferee Defendants filed three new
motions for summary judgment, one challenging the Court's
jurisdiction, one seeking dismissal of the Trustee's claim to
vacate the Abandonment Order, and one requesting dismissal of
all claims against Sylvia Laing and Nancy Laning (collectively,
the "Second Summary Judgment Motions"). These motions were set
for hearing on January 5, 2007. On December 15, 2006, the
Trustee filed a motion for summary judgment requesting the
Court to vacate the Order of Abandonment under Rule 60(b),
Fed.R.Civ.P., on the ground that the order had been entered as
a result of a fraud upon the Court (the "Trustee's Summary
Judgment Motion"). This motion was set for hearing on
January 19, 2007.

The Trustee served his second request for production of
documents on the Transferee Defendants on December 7, 2006.
These requests sought production of the Transferee Defendants'
tax returns, which were produced as requested. On February 24,
2007, the Trustee served on Herman Recor third requests for
production of documents against each of the Transferee
Defendants (collectively, the "Third Requests"). Responses to
the Third Requests were due on March 26, 2007. Included in the
Third Requests to the Levenhagens was Request for Production
No. 3, which stated:

> Please produce any and all correspondence,
> including emails, phone messages, letters or
> other communication documents between 1) the
> Levenhagens and the debtors; 2) the Levenhagens
> and the debtors' attorneys; 3) the Levenhagens
> and any other defendants to this proceeding; 4)
> the Levenhagens and any other defendant's legal

MEMORANDUM DECISION - 17

> counsel; 5) the Levenhagens or any entity acting on their behalf and any entity other than their counsel which relate to or mention this proceeding, the subject matter of this proceeding, any defendants named in this proceeding, the debtors, the debtors counsel, and the property which is referenced in the Complaint.

The quoted request repeated the request contained in the Levenhagen Requests for emails between the Debtors and the Levenhagens. Request for Production No. 4 sought production of correspondence, including emails, between the Levenhagens and Kenny North.

On January 5, 2007, the Court denied the Second Summary Judgment Motions and on January 17, 2007, the Court granted the Trustee's Motion for Summary Judgment. In connection with the Trustee's motion, the Trustee produced documents evidencing that Mr. Simonson was owed substantial commissions for his work for GFS, including over $100,000 in commissions from the sale of his own properties.[3] *See* Declaration of Denice Moewes in Support of Trustee's Motion for Summary Judgment on Trustee's Complaint Asking Court to Vacate its Order Abandoning Property of the Estate (Docket No. 81), Exs. 12, 13. The Court also held that the Abandonment Order should be vacated pursuant to Rule 60(b), Fed.R.Civ.P., on the ground that it was procured by a fraud on the Court. An order to that effect was approved by the Court and docketed on February 13, 2007 (Docket no. 128).

---

[3]

This evidence contradicted the assertions of the Levenhagens in the First Motion for Summary Judgment that the Debtors were just victims of GFS and had no financial arrangements with GFS.

MEMORANDUM DECISION - 18

On the same date, the Court entered an order setting a trial date of May 8, 2007.

In March of 2007 the Trustee was able to reach an agreement with Herman Recor on the timing and location of the Trustee's depositions of the Levenhagens and the Lanings. The Trustee therefore noted the depositions of the Levenhagens for April 2, 2007 in Minneapolis, Minnesota, and the Lanings for April 3, 2007 in Chicago, Illinois. Moewes Decl., ¶ 32, Ex. 21. Counsel for the Trustee was anticipating receipt of the documents responsive to the Third Requests on Monday, March 26, 2007, in time to review them and have them available for the depositions by the first week of April. Despite the fact that Herman Recor had in its possession as of March 26, 2007 documents responsive to the Third Requests which had not yet been turned over to the Trustee, and despite the Trustee's request for responses again on March 26, 2007, additional documents were not made available to Trustee's counsel until 4:30 pm. on Wednesday, March 28, 2007. In Ms. Moewes' judgment, this was too late for meaningful review and delivery out-of-state for the depositions. Moewes Decl., ¶40.

The March 28 production of documents by Herman Recor did include 88 emails and fax documents which Mr. Levenhagen had produced as part of the November 1 2006 Documents, but none of these documents were dated after January 18, 2006. *Id.*, ¶48. The production did *not* include, however, 43 additional emails and faxes which Herman Recor had in its possession. Moewes Decl., ¶¶41, 42, Ex. 28. Herman Recor made no objections to

MEMORANDUM DECISION - 19

Requests for Production 3 and 4 referenced above. *Id.*, ¶40.

The Trustee's Motion for Summary Judgment against the Levenhagens (Docket no. 183) was filed on March 27, 2007 and noted for hearing on April 20, 2007. Ms. Moewes flew to Minnesota for the Levenhagens' depositions on April 2. At the deposition, Mr. Levenhagen agreed to search for and produce to his counsel responsive documents dated after January 18, 2006. The deposition was aborted, however, because Herman Recor had advised Mrs. Levenhagen that she did not need to appear at the deposition, despite the fact that the notice of deposition required her appearance. Further, when Mr. Levenhagen learned at the deposition for the first time that the Court had referred the whole proceeding for criminal investigation he wanted an opportunity to consult with criminal counsel before continuing the deposition. Herman Recor had not advised the Levenhagens of the criminal referral the Court advised it was required to make at the December 1, 2006 hearing. Moewes Decl., Ex. 21.

After the aborted depositions, Ms. Moewes reminded Mr. Araki in an April 13, 2007 email of Mr. Levenhagen's commitment at the deposition to produce emails dated after January 18, 2006. Mr. Araki never responded to this email despite the fact that he had received responsive documents from Mr. Levenhagen on both March 2, 2007 and April 4, 2007. Levenhagen Decl., ¶¶19, 21, 22, 23, Exs. 7, 8.

The Trustee's Third Amended Complaint was filed on April 18, 2007 (Docket no. 203). The Third Amended Complaint

MEMORANDUM DECISION - 20

added Lake Front and New Century as defendants. The complaint
alleged that on October 11, 2005, the Laings had entered into a
Buying Partner General Terms of Agreement with New Century and
a Specific Buying Partner Agreement with New Century pursuant
to which they would finance the purchase of the 11609 Property
as the nominees for New Century. The Trustee alleged that the
Buying Partner General Terms of Agreement was signed by Kenny
North as President of New Century and that the purchase price
for the 11609 Property was to be no more that $1,650,000. The
Third Amended Complaint contained new allegations that David
Laning entered into a Buying Partner General Terms of Agreement
and a Specific Buying Partner Agreement with Lake Front
pursuant to which Laning would act as Lake Front's nominee in
purchasing the 11619 Property for no more that $1,300,000.

On April 20, 2007, the Court granted the Trustee's Motion
for Summary Judgment against the Levenhagens, rejecting the
Levenhagens' continued assertion in pleadings filed by Herman
Recor that they were good faith purchasers of the 11609
Property without knowledge of the involvement of the Debtors
until after the sale occurred. The Court also ordered the
parties to attend a settlement conference and attempt to agree
on a form of remedy for the Trustee and the estate in light of
the Court's finding that the Levenhagens were strictly liable
as initial transferees under Bankruptcy Code § 550.

One month later, on May 15, 2007, Mr. Araki advised
Ms. Moewes by email that he was in the process of drafting an
email to his clients advising them that "I believe there is a

MEMORANDUM DECISION - 21

real possibility now for a conflict of interest on the part of
our firm and that we will be filing our motion to withdraw."
Moewes Decl., Ex. 28.  On June 8, 2007, Herman Recor withdrew
as counsel for the Transferee Defendants and Mr. Marc Stern
substituted in as their counsel.

When Ms. Moewes finally took Mr. Levenhagen's deposition on
October 31, 2007, with the assistance of Mr. Stern,
Mr. Levenhagen testified about the emails and other documents
he had delivered to Herman Recor.  After the deposition,
Mr. Stern made the documents Mr. Levenhagen had produced to
Herman Recor available to Ms. Moewes.  In the process of
examining those documents Ms. Moewes found all of the documents
that Herman Recor had either not timely produced in response to
the Trustee's discovery requests or had not produced at all.
The Trustee has assembled the emails and fax documents that
were in the records from Herman Recor clipped together with a
yellow cover sheet identifying them as "emails btwn
Levenhagen/Simonson" in Exhibit 35 to the Moewes Decl.
Exhibit 45 to the Moewes Decl. contains all of the emails and
faxes Herman Recor never turned over to the Trustee.

C.   <u>The Trustee's Motion for Sanctions</u>.

The Trustee's Memorandum in Support of Trustee's Motion for
Sanctions Against Herman Recor Araki Kaufman Simmerly &
Jackson, PLLC For Violations of Discovery Rules describes in
detail, beginning at page 46 and continuing to page 52, each of
Herman Recor's alleged violations of the discovery rules at
issue.  These violations include falsely representing that all

MEMORANDUM DECISION - 22

responsive documents had been produced (when they clearly had not been), failing to provide discovery responses in a timely fashion, substantially delaying the release of responsive documents even after repeated requests for supplementation were made by the Trustee, producing incomplete and/or altered documents (Moewes Decl., ¶43, Ex. 29), and failing completely to produce substantial relevant documents. For these discovery abuses, the Trustee seeks compensatory damages of $136,864.93 plus attorneys' fees and costs incurred in bringing the Sanctions Motion of $95,174.50.

In response to the Sanctions Motion, Herman Recor did not deny its failure to produce documents relevant and responsive to the Trustee's discovery requests. Instead, Herman Recor argued that any failures on its part were unintentional and not prejudicial to the Trustee or his position in the litigation. Mr. Robert Jackson filed a declaration in opposition to the Sanctions Motion in which he testified that he had no specific recollection of the emails that were part of the Withheld Documents, that he was not involved in any deliberate withholding of any documents, and that his normal practice was to forward documents and emails to Leanne Volz, Herman Recor's litigation paralegal. Declaration of Robert B. Jackson in Opposition to Trustee's Motion for Sanctions for Violations of Discovery Rules, Docket no. 352. Mr. Jackson speculated that because he was "organizing and reorganizing" emails in the process of preparing responses to the Trustee's discovery requests, he may have "excluded e-mails to assess whether they

MEMORANDUM DECISION - 23

were privileged." *Id.* His declaration describes his

involvement with GFS, the Debtors, the Levenhagens and Kenny

North. Mr. Araki also filed a declaration in opposition to the

Sanctions Motion. In his declaration, Mr. Araki testified that

he did not participate extensively in the discovery requests

and therefore could not recall the exact details of the

process. Declaration of Stephen T. Araki in Opposition to

Trustee's Motion for Sanctions for Violations of Discovery

Rules, Docket no. 353. He did admit that he received emails

from the Levenhagens and that it was his custom to forward

those to Ms. Volz. Like Mr. Jackson, Mr. Araki claimed not to

have any specific recollection of the emails in the Withheld

Documents but attested that he was not involved in any

deliberate withholding of documents. Ms. Volz filed her own

declaration in opposition to the Sanctions Motion in which she

testified that she was receiving documents from the Transferee

Defendants on an almost daily basis and that she reviewed and

copied them for production. Declaration of Leanne Volz in

Opposition to Trustee's Motion for Sanctions for Violations of

Discovery Rules, Docket no. 354. She stated that she believed

she had sent all responsive documents to the Trustee and at no

time ever redacted or was instructed to redact documents from

Mr. Levenhagen. In sum, Herman Recor provides no explanation

or justification for the failure to produce the Withheld

Documents or for alternations to certain of the documents.

    At the hearing on the Sanctions Motion on July 11, 2008,

the Court orally ruled that Herman Recor had not demonstrated

MEMORANDUM DECISION - 24

that its failure to timely and completely respond to the

Trustee's discovery requests was substantially justified and

that an award of compensatory damages to the Trustee would not

be unjust.  The Court took the amount of compensatory damages

to be awarded under advisement and asked the parties to provide

supplemental materials on that question.  The Court also noted

that punitive or non-compensatory damages would not be awarded

in the absence of an evidentiary hearing.

### III.  DISCUSSION

This case presents the most serious allegation of discovery

misconduct the Court has encountered.  When parties or their

lawyers determine, independently of the rules of civil

procedure, what should or should not be produced to their

opponent, the adversary system breaks down.  Thus, the

importance of enforcing the rules of discovery, which are

intended to put different sides in litigation on the same

plane, cannot be overstated.  *See United Medical Supply Co. v.*

*U.S.*, 77 Fed.Cl. 257, 258-59 (Fed.Cl. 2007)("Aside perhaps from

perjury, no act serves to threaten the integrity of the

judicial process more than the spoliation of evidence.  Our

adversarial process is designed to tolerate human failings -

erring judges can be reversed, uncooperative counsel can be

shepherded, and recalcitrant witnesses compelled to testify.

But, when critical documents go missing, judges and litigants

alike descend into a world of *ad hocery* and half measures-and

our civil justice system suffers.").

In this case, the evidence Herman Recor withheld from the

MEMORANDUM DECISION - 25

Trustee was discovered only after Herman Recor withdrew from
its representation of the Transferee Defendants and another
attorney was retained by the Levenhagens.  No effort was ever
made by Herman Recor to correct its failure to produce
documents or to supplement discovery requests with documents it
withheld.

    A.   <u>The Court's Inherent Power to Impose Sanctions</u>.

    The Court has both inherent and statutory power to impose
discovery sanctions.  In *Chambers v. NACSO, Inc.*, 501 U.S. 32,
45-46, 111 S.Ct. 2123 (1991), the Supreme Court recognized the
inherent power of courts to impose appropriate sanctions where
conduct disrupts the judicial process.  This inherent power
resides in the bankruptcy court.  *In re Rainbow Magazine, Inc.*,
77 F.3d 278 (9th Cir. 1996).  The Ninth Circuit has held that
sanctions are available under the court's inherent power if
"preceded by a finding of bad faith, or conduct tantamount to
bad faith," such as recklessness "combined with an additional
factor such as frivolousness, harassment, or an improper
purpose."  *See Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001);
*see also Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001).

    B.   <u>The Court's Statutory Power to Impose Sanctions</u>.

    The Court's statutory power to impose sanctions arises
under Rule 26 and Rule 37, Fed.R.Civ.P.  Sanctions for
violation of Rule 37 may be imposed for negligent conduct.  *See*
Fed.R.Civ. P. 37(b); *Fjelstad v. American Honda Motor Co.,
Inc.*, 762 F.2d 1334, 1343 (9th Cir. 1985); *Hyde & Drath v.
Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) ("We have not required

MEMORANDUM DECISION - 26

a finding of bad faith on the part of the attorney before

imposing sanctions under Rule 37."). The lack of bad faith

does not immunize a party or its attorney from sanctions,

although a finding of good or bad faith may be a consideration

in determining whether imposition of sanctions would be unjust,

*see Hyde & Drath*, 24 F.3d at 1171, and the severity of the

sanctions. Only the most drastic sanction, dismissal,

generally requires a finding that the conduct was "due to

willfulness, bad faith or fault of the party...." *In re*

*Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d

1217, 1233 (9th Cir.2006). Importantly, "[b]elated compliance

with discovery orders does not preclude the imposition of

sanctions." *See North American Watch Corp*. *v. Princess Ermine*

*Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986); *see also G-K*

*Properties v. Redevelopment Agency of City of San Jose*, 577

F.2d 645, 647-48 (9th Cir.1978).

In this case, both subsections (c) and (d) of Rule 37

apply. Subsection (c) permits the Court to order "payment of

the reasonable expenses, including attorney's fees, caused by"

a party's failure to provide information as required by

Rule 26(a) or (e) "unless the failure was substantially

justified or is harmless." Rule 26(a), responses to requests

for production of documents, and 26(e), supplementing those

responses, are implicated here by Herman Recor's conduct.

Rule 37(d)(3) mandates the Court to "require the party

failing to act, the attorney advising that party, or both to

pay the reasonable expenses, including attorney's fees, caused

MEMORANDUM DECISION - 27

by the failure unless the failure was substantially justified or other circumstances make an award of expenses unjust."  The failures for which sanctions are authorized under Rule 37(d) include under (1)(A)(i) a party's failure to attend a deposition, or under (ii) failure to respond to a request under Rule 34, which covers the disclosure of electronically stored information.  Rule 37(d)(2) specifically provides that failure to produce requested discovery on the ground that the discovery sought was objectionable, is not an acceptable excuse for failing to produce the discovery.

Finally, Rule 26(g), Fed.R.Civ.P., requires that each disclosure be signed by at least one attorney of record and by signing, that attorney certifies that to the best of their knowledge, information and belief "formed after a reasonable inquiry" each disclosure is complete and correct as of the time it is made, and that as to responses to discovery requests, the response is not interposed for any improper purpose such as to cause unnecessary delay or needlessly increase the cost of litigation.  Rule 26(g)(3) states that if a certification violates this rule "without substantial justification" the court "must impose" an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Although federal law and the Federal Rules of Civil Procedure apply to this case, a Washington Supreme Court decision, *Washington State Physicians Insurance Exchange &*

MEMORANDUM DECISION - 28

*Association v. Fisons Corp.*, 122 Wash.2d 299, 858 P.2d 1054 (1993), provides additional guidance as to how the above described rules should be applied.  In addressing whether the lower court should have awarded sanctions against a drug company for discovery abuse, the court held that the inherent power of the court to sanction should not be used where other court rules more properly apply.  The court further held that the sanction provision of Washington Civil Rule 37 should not be applied where the more specific provisions of Rule 26 better fit the situation.  The court went on to construe Washington Civil Rule 26(g), which is virtually identical to Rule 26(g), Fed.R.Civ.P., looking to federal law for guidance.  The court concluded after reviewing federal authorities that "[s]ubjective belief or good faith alone no longer shields an attorney from sanctions under the rules," that intent need not be shown before sanctions are mandated, and a motion to compel compliance with the rules is not a prerequisite to a sanctions motion. *Id.* at 1078.  The court held that in determining whether an attorney has complied with the rule, the trial court should consider all of the surrounding circumstances, the importance of the evidence to its proponent, and the ability of the opposing party to formulate a response or comply with the request.

    C.   <u>The Trustee's Right to Compensation Under Rule 26(g)</u>.

    Rule 26(g), Fed.R.Civ.P., applies to the circumstances at issue in this case.  Thus, there is no need for the Court to utilize Rule 37 or its inherent powers to issue sanctions.

MEMORANDUM DECISION - 29

Having found that Herman Recor was not substantially justified in failing to provide discovery to the Trustee, Rule 26(g) requires the Court to award sanctions to the Trustee, including reasonable attorneys' fees caused by the violation.

It should be noted that the Trustee has not sought any sanctions against the Levenhagens. Mr. Levenhagen produced documents promptly and completely. If anything, the Levenhagens were cast in an uncooperative and negative light by their counsel's failure to turn over documents to the Trustee.

### 1. Consideration of the Surrounding Circumstances.

On October 13, 2006, when Herman Recor filed the First Motion for Summary Judgment on behalf of the Transferee Defendants, it had the Withheld Documents in its possession, including 119 emails and faxes. These documents should have been produced by October 27, 2006, in advance of the hearing on the First Motion for Summary Judgment, which was set for November 3, 2006. When the hearing finally took place on December 1, 2006, after being continued because of Herman Recor's failure to respond to the First Requests, Herman Recor had not produced to the Trustee the Withheld Documents nor advised the Trustee that these documents had not been produced with the First Response on November 7, 2006. As of the time of the hearing on the Second Summary Judgment Motions on January 5, 2007 and the Trustee's Summary Judgment Motion on January 19, 2007, the Withheld Documents had not been produced to the Trustee. It was not until March 28, 2007, that Herman Recor finally produced 88 emails and faxes from the November 1

MEMORANDUM DECISION - 30

2006 Documents.  At that date, Herman Recor was still

withholding an additional 43 emails and faxes that were

responsive to the prior production requests of the Trustee.

These documents were still being withheld by Herman Recor from

the Trustee when Ms. Moewes flew to Minneapolis for the

Levenhagens' depositions on April 2, 2007, when the Trustee

filed the Third Amended Complaint on April 18, 2007, when the

Trustee's Motion for Summary Judgment Against the Levenhagens

was heard on April 20, 2007, and when the Trustee took

Mr. Levenhagen's deposition on October 31, 2007.  Thus, when

the Trustee was defending or pursuing the most important pre-

trial motions in the case, he was disadvantaged by Herman

Recor's untimely disclosures and nondisclosures.  Six of the

motions the Trustee was forced to defend during this time

period were brought by Herman Recor and four of those motions

were heard after answers to the First Requests were due from

the Transferee Defendants.

     The documents withheld by Herman Recor implicated other

defendants, which forced the Trustee to amend his Complaint

twice.  The emails that were withheld showed the significant

involvement of Mr. Simonson in the activities of GFS and the

involvement of Mr. Jackson and Mr. North in a number of the

transactions at issue.  The names of attorney Robert Jackson

and Kenny North had already come up in related litigation in

adversary case number 06-01041 (also assigned to this Court),

where the Trustee sued the Debtors for turnover of estate

funds.  In that litigation, the Court held that the Debtors had

MEMORANDUM DECISION - 31

violated a restraining order issued by the Court prohibiting

the Debtors from using certain funds.  To avoid the Trustee's

discovery of the Debtors' circumvention of the restraining

order in that case, the Simonsons had borrowed money from Kenny

North, deposited the funds into Mr. Jackson's trust account,

then accessed the money by having Mr. Jackson issue cashier's

checks to Mr. Simonson which could not be traced by the

Trustee.  After a trial concluding on April 26, 2006, the Court

issued a letter ruling on May 10, 2006 finding the Debtors in

contempt and ordering Mr. Jackson to turn over to the Trustee

any funds of the Debtors paid to him after the issuance of the

restraining order.  The Court ultimately denied the Debtors'

discharge based upon their conduct.  *See* Case No. 06-01041,

Docket nos. 169, 144.

The emails Herman Recor withheld from the Trustee in

discovery in this adversary proceeding provide further evidence

of Mr. Jackson's involvement in numerous other transactions

related to the Simonsons as well as the involvement of Kenny

North and his companies, Lake Front and New Century.  The

Withheld Documents include documents relevant to the

transactions between the Debtors, the Levenhagens, and Network

and the deed of trust transaction between Network and Daniels

Capital, which Mr. Levenhagen did not know about until after

Herman Recor withdrew from representing him.  Levenhagen Decl.,

¶¶ 29, 30, 36, 40.  In addition, Mr. Levenhagen did not know

that Mr. Araki was the escrow agent for the Daniels Capital

transaction and that Herman Recor was the trustee under the

MEMORANDUM DECISION - 32

Daniels Capital deed of trust. *Id.*, ¶36. Mr. Levenhagen did
not know where the $167,775 in Daniels Capital loan proceeds
went until the Trustee discovered the funds were deposited into
Herman Recor's trust account and then paid to Network. Moewes
Decl., Exs. 38, 39. Nevertheless, the Daniels Capital deed of
trust represented an increase in the debt secured by the 11609
Property which the Levenhagens' believed they owned.

Herman Recor's discovery abuses delayed the trial,
complicated the case, and significantly increased the costs to
the Trustee. Because bankruptcy trustees must use funds of the
estate to compensate their lawyers, every dollar spent on
litigation costs is a dollar that does not reach the pockets of
the debtor's creditors. Thus, increased costs in bankruptcy
litigation force trustees to accept settlements a fully funded
litigant might not otherwise accept or force trustees to limit
litigation activities to their disadvantage. The billing
statements provided by Wood & Jones, counsel for the Trustee,
evidence the significant expense incurred by the Trustee in
this litigation.

  2. <u>The Importance of the Discovery to the Trustee</u>.

Herman Recor argues that the nondisclosures were harmless
because most of the information withheld was ultimately
discovered by the Trustee from other sources. First, that is
simply not true. The emails between Mr. Levenhagen and the
Debtors and other defendants would not have been and were not
discovered from other sources. Second, even if some of the
documents were ultimately discovered by the Trustee, it was

MEMORANDUM DECISION - 33

only after an expensive discovery and summary judgment process. The Trustee fought off a total of four different motions brought by Herman Recor on behalf of the Transferee Defendants while Herman Recor withheld documents relevant to those motions.

The Trustee contends that the Withheld Documents would have provided support for the Trustee's contention that Mr. Simonson was working for GFS and was not another victim of GFS as Mr. Levenhagen contended in support of the First Motion for Summary Judgment. Herman Recor responds that the Trustee already had information to suggest Mr. Simonson's direct involvement with GFS by November of 2006 when the Trustee filed his response to the Transferee Defendants' First Motion for Summary Judgment and that therefore the Trustee was not prejudiced in any way. This argument, however, points out just how fortuitous it was that the Trustee had obtained some evidence of Mr. Simonson's involvement with GFS because the First Motion for Summary Judgment drafted by Herman Recor made the argument that Mr. Simonson was just another victim of a scheme by GFS and Dave Langford. In fact, the First Motion for Summary Judgment in footnote 8 states that "Mr. Simonson did not benefit from the sale to these third parties, nor did he have any financial arrangement or agreement with Global Financial Solutions." That statement was clearly false. In a March 17, 2005 email from Doug Simonson to Tiffany Doty (who appears to have been an associate of David Langford), Mr. Simonson complained that he had "worked his heart out"

MEMORANDUM DECISION - 34

producing buying partners for 30 GFS deals for which he should
have been paid commissions by GFS of over $200,000. Moewes
Decl., Ex. 45, p. 26. He further describes how GFS failed to
pay his business expenses for the company. *Id.* Other emails
from Mr. Simonson indicated his use of a GFS email account,
*i.e.* doug.simonson@fg-solutions.com. *Id.* at p. 8. None of
these emails had been produced to the Trustee by the time the
Trustee was required to respond to the First Motion for Summary
Judgment.

Also included with the Withheld Documents is a March 6,
2006 email from Mr. Simonson to Mr. Levenhagen in which
Mr. Simonson essentially coaches Mr. Levenhagen as to how to
describe the transactions related to the 11609 Property in the
event Mr. Levenhagen's subpoena to testify is not quashed. The
email reads in part: "Hi Mike, I believe we will get your
subpoena dropped. But, in case we do not I wanted to give you
some background and refresh your memory a bit on this whole
thing." *Id.*, p. 100. Following that introductory statement,
Mr. Simonson's email proceeds as a lengthy and detailed
description of how he sees the transactions and the litigation.
The Trustee would have been better able to judge the
credibility of both Mr. Levenhagen and Mr. Simonson had he had
access to the contents of this email. The email appears not to
have been provided to Herman Recor by Mr. Levenhagen until
April 4, 2007, however, only because Mr. Levenhagen was under
the misunderstanding that he did not have to produce email
communications after January of 2006. *See* Second Declaration

MEMORANDUM DECISION - 35

of Cynthia A. Kuno, Docket no. 376, Ex. D.  Had Herman Recor

done its job, Mr. Levenhagen would have been advised that the

Levenhagen Request did not limit the time for production to

communications prior to that date.

Included in the Withheld Documents were the transactional

documents reflecting the transfer of Network from the Debtors

to the Levenhagens and back.  Herman Recor concedes that at the

December 1, 2006 hearing, Mr. Wood noted that the Trustee

lacked documentation as to that transaction.  However, Herman

Recor argues that once the Court held on that date that the

Levenhagens were the initial transferees for purposes of

Section 550, the documents related to the transfers were

irrelevant.  This ignores the fact, however, that the Trustee

would need to follow the interest in Network and in the 11609

and 11611 Properties into the hands of Laing and Laning.  Thus,

the transactional documents related to the Network transaction

were relevant to the Trustee's pursuit of these other

defendants and should have been produced.

The Trustee contends that had the Withheld Documents been

produced, he would have understood earlier in the litigation

how Kenny North, Lake Front, and New Century were involved in

the challenged transactions.  Herman Recor argues that by the

time the Trustee filed his response to the First Motion for

Summary Judgment on November 22, 2006, the Trustee already knew

that Kenny North had some involvement.  Herman Recor concedes,

however, that the Trustee had to acquire this information

through subpoenas of escrow files from Taylor and Associates.

MEMORANDUM DECISION - 36

The emails contained in Exhibit 45 to the Moewes Decl. contain very detailed information about Kenny North's involvement in the disputed transactions. This information would have been readily available to the Trustee had it been timely produced by Herman Recor. The fact that the Trustee was once again fortuitous enough to have obtained the information elsewhere in time to respond to a summary judgment motion by the Transferee Defendants does not eliminate the prejudice resulting from the wrongful withholding of the information.

Finally, the Trustee argues that the Withheld Documents evidenced that attorneys at Herman Recor, in particular Robert Jackson, had significant involvement in the transactions at issue and might be fact witnesses. The fact that the Court pointed out at the hearing on December 1, 2006, that the firm name appeared on the Daniels Capital deed of trust does not absolve Herman Recor from liability. In fact, Herman Recor ultimately withdrew as counsel for the Transferee Defendants citing a conflict for the reason.

The Court concludes that the Withheld Documents were relevant and material to the Trustee's case and that the Trustee was prejudiced by not having access to the documents. During the time the documents were not available to the Trustee, the Trustee was engaged in expensive discovery, substantial motion practice, and settlement discussions.

> 3. <u>The Ability of Herman Recor to Comply with the Trustee's Discovery Requests</u>.

Herman Recor clearly had the ability to comply with the

Case 06-01235-CMA   Doc 393   Filed 10/27/08   Ent. 10/27/08 12:17:09   Pg. 37 of 49

Trustee's discovery requests because the documents had been
provided to Herman Recor by Mr. Levenhagen well in advance of
when the documents were due to be turned over to the Trustee.
Mr. Jackson testified in his declaration that the documents in
Exhibit 45 "may have been" set aside because they were
privileged and then they forgot later to address them.  The
Court has reviewed the documents in Exhibit 45, however, and
concludes that there is no argument that these documents are or
were privileged.  Further, even if Herman Recor believed the
documents to be privileged, the rules require the assertion of
the privilege at the time production is required and the
creation of a privilege log.  Neither occurred in this case.

     D.   <u>The Award</u>.

The Trustee seeks compensatory sanctions for Herman Recor's
discovery abuses in the amounts shown below broken down by
category (*see* Supplemental Declaration of Denice Moewes in
Support of Trustee's Memorandum In Support of Trustee's Motion
for Sanctions, Docket no. 368).  Each of the stated amounts
reflects the Trustee's billed time for a particular matter, as
follows:

```
Discovery:                                    $ 44,608.00
First Motion for Summary Judgment:            $ 32,414.50
Second Summary Judgment Motions:              $  7,081.00
Trustee's Summary Judgment Motion:            $ 25,968.00
Trustee's Summary Judgment vs. Levenhagen:    $ 25,098.00
Expenses for aborted Levenhagen and Laing
   deposition on April 2 and 3, 2007:         $  1,695.43
Subtotal:                                     $136,864.93

Attorneys fees incurred in bringing
   the Sanctions Motion
   (through June 30, 2008):                   $ 95,174.50
Total:                                        $232,039.43
```

MEMORANDUM DECISION - 38

Subsequent to the July 11, 2008 hearing, Herman Recor filed a detailed analysis of the Trustee's charges, which categorizes the Trustee's attorneys' billed time into the following three categories: (i) category "N", which includes the charges Herman Recor disputes and contends are not related to its failure to produce discovery, (ii) category "Q", which includes charges Herman Recor asserts are too vague for it to make a determination as to whether the charges arise or are related to its production failure, and (iii) category "R", which includes charges Herman Recor agrees are reasonably related to its failure to timely produce discovery. *See* Declaration of Cynthia Kuno In Support of Herman Recor Araki Kaufman Simmerly & Jackson PLLC's Memorandum Regarding Trustee's Reasonable Fees Related to Discovery Omissions, Ex. A (Docket no. 375). The fee amounts associated with the charges in the three categories are as follows:

```
Category N (disputed):            $144,092.00
Category Q (vague):               $105,505.50
Category R (reasonably related):  $ 88,602.50
Total:                            $338,200.00
```

Based on the analysis, Herman Recor agrees that $88,602.50 of the fees sought appear to be related to the discovery abuses, but Herman Recor disputes that the amount of these fees is reasonable. Unfortunately, however, not much more can be gleaned from Herman Recor's analysis. As explained in the letter to the Court from Crocker Kuno dated September 12, 2008 (Docket no. 382), Herman Recor's analysis included *all* of the Trustee's attorneys' services in this adversary proceeding, not

MEMORANDUM DECISION - 39

just the fees requested by the Trustee in the Sanctions Motion.

Therefore, Crocker Kuno categories N and Q necessarily contain

charges for which the Trustee has not sought compensation from

Herman Recor.

The Court has engaged in a detailed review of the charges

sought by the Trustee in the Sanctions Motion as well as the

detailed analysis provided by Crocker Kuno.  In addition, the

Court has reviewed each of the disputed time entries cited by

Crocker Kuno at pages 13 through 16 of the Memorandum of Herman

Recor Araki Kaufman Simmerly & Jackson PLLC Regarding Trustee's

Reasonable Fees Related to Discovery Omissions (the "Herman

Recor Memorandum").  The Court will address the specific

charges in the Trustee's demand by category.  In accordance

with the Court's local rules, Wood & Jones has recorded its

time for its work in the Main Case into 20 separate categories,

including a separate category for this adversary proceeding.

Time billed to this adversary proceeding is further broken down

into 10 additional categories.  *See* Second Interim Application

for Compensation for Reimbursement of Expenses by Wood & Jones,

P.S., Attorney for Chapter 7 Trustee filed May 30, 2007 (the

"Trustee's Second Application," Docket no. 155); Third Interim

Application for Compensation for Reimbursement of Expenses by

Wood & Jones, P.S., Attorney for Chapter 7 Trustee filed May 6,

2008 (the Trustee's Third Application," Docket no. 222).  The

Wood & Jones billing statements reviewed by the Court are

attached to the Declaration of Denice Moewes In Support of

Second Interim Application for Compensation and Reimbursement

MEMORANDUM DECISION - 40

of Expenses of Wood & Jones, P.S. Attorney For Trustee and the Declaration of Denice Moewes In Support of Third Interim Application for Compensation and Reimbursement of Expenses of Wood & Jones, P.S. Attorney For Trustee (collectively, the "Moewes Fee App. Declarations")

      1.  <u>Discovery</u>.

The Trustee seeks compensation for services performed by his counsel in the amount of $44,608 related to discovery matters. This amount includes only services performed by Wood & Jones related to discovery after the Transferee Defendants' answers to the First Requests were due on October 27, 2006. *See* Supplemental Declaration of Denice Moewes in Support of Trustee's Memorandum In Support of Trustee's Motion for Sanctions (Docket no. 368). For the most part, the services for which the Trustee seeks compensation under this category are included in the Trustee's Second Application for Fees. Additional fees related to discovery involving the Transferee Defendants, however, are included in the Trustee's Third Application. The Court has reviewed each of the charges in this category for which the Trustee seeks compensation and concludes that $28,225.50 in fees are reasonably related to Herman Recor's discovery abuses. The specific charges included by the Court are shown on Exhibit A attached hereto. In a few instances, time entries were lumped and the Court made a reduction in the charge to adjust for time not related to the discovery abuses. In addition, the Court included time incurred in connection with the second deposition of

MEMORANDUM DECISION - 41

Mr. Levenhagen which, had the discovery abuses not occurred, would not have been necessary.  Herman Recor argues that because the Levenhagens were parties to the action, the Trustee would have had to depose them regardless of the discovery abuses.  The problem with that argument is that it ignores the waste of time and expense incurred by the Trustee's attorneys preparing for depositions that had to be aborted and preparing for depositions without all relevant and material documents having been produced in advance of the depositions.  Under the circumstances of this case, the Court believes the Trustee should be reimbursed for his attorneys' fees incurred in preparing for and attending both depositions.  In making the allowances on Exhibit A in the category of discovery, the Court has taken into account the specific objections at page 13 and 14 of the Herman Recor Memorandum.

2.    <u>First Summary Judgment Motion</u>.

The First Motion for Summary Judgment was filed by Herman Recor, was defended by the Trustee, and heard by the Court without the benefit of the Withheld Documents.  The Court concludes that Herman Recor should pay Wood & Jones' reasonable attorneys' fees incurred in connection with the motion.  The total fees sought under this category are $32,414.50.  The Court holds that all of the requested time is reasonable. Trustee's counsel should have had documents responsive to the First Motion for Summary Judgment well in advance of the December 1, 2006 hearing on the motion.  Instead, the First Response was not made until November 7, 2006 and that

MEMORANDUM DECISION - 42

production was missing all of the Withheld Documents.  Herman Recor argues that because the Trustee prevailed on this motion, he should not be awarded compensation.  The Trustee was at a significant disadvantage defending the First Motion for Summary Judgment because of Herman Recor's discovery abuses.  The fact that the Trustee was able to piece enough of the relevant transactions together to avoid dismissal of his claims against the Transferee Defendants does not absolve Herman Recor.

Within this category of time the Trustee has included charges for legal fees incurred in the Trustee's defense of the Debtor's Summary Judgment Motion.  The Court holds that the Trustee should be reimbursed by Herman Recor for these charges as well because the Withheld Documents were directly relevant to Mr. Simonson's claim that he was a mere victim of GFS.  Accordingly, the Court will award the Trustee $32,414.50 in sanctions under this category.

3.  <u>Second Summary Judgment Motions</u>.

In the Second Summary Judgment Motions, the Transferee Defendants raised many of the same factual and legal arguments included in the First Motion for Summary Judgment.  The result was the same: the Trustee defended the motions and the Court ruled against the Transferee Defendants.  Because the issues were similar to those raised in the First Motion for Summary Judgment, the Trustee incurred only $7,081 in legal fees under this category for which he seeks reimbursement.  For the reasons stated in the preceding section, the Court finds these fees reasonably related to Herman Recor's discovery abuses and

MEMORANDUM DECISION - 43

1  will order that they be reimbursed by Herman Recor.

2       4.  Trustee's Motion for Summary Judgment.

3        The Trustee's Summary Judgment Motion sought avoidance of

4  the Abandonment Order under Rule 60(b), Fed.R.Civ.P., on the

5  ground that it had been procured by the fraud of the Debtors in

6  the Main Case.  The Trustee seeks reimbursement of $25,968 in

7  fees related to the motion.  There was no allegation in the

8  motion, however, that any of the Transferee Defendants had

9  engaged in any fraud in connection with the entry of the

10  Abandonment Order.  Nevertheless, to protect their interests in

11  the 11609 Property and the 11611 Property, the Transferee

12  Defendants filed a response to the Trustee's motion.  *See*

13  Defendant's Response to Trustee's Amended Motion for Summary

14  Judgment filed January 12, 2007, Docket no. 106.  The Debtors

15  also opposed the Trustee's motion.  *See* Debtor's Response to

16  Trustee's Amended Motion for summary Judgment filed on

17  January 12, 2007, at Docket no. 108.

18        There is no evidence that any of the Transferee Defendants

19  had anything to do with the procurement of the Abandonment

20  Order in the Main Case.  Their transactions with the Debtors

21  occurred after the entry of that order.  Although some of the

22  Withheld Documents might have been useful to the Trustee in

23  making the motion under Rule 60(b), the Trustee was able to

24  prevail on the motion without that information.  The Court

25  concludes that Herman Recor should not have to reimburse the

26  Trustee for his legal fees incurred in pursuing the Trustee's

Summary Judgment Motion because it was not necessitated by any

MEMORANDUM DECISION - 44

unlawful conduct of the Transferee Defendants.

     5.  <u>Trustee's Motion for Summary Judgment Against the Levenhagens</u>.

The Trustee seeks $25,098 for reimbursement of his legal fees incurred pursing the Trustee's Motion for Summary Judgment Against the Levenhagens. In that motion, the Trustee argued that he was entitled to judgment as a matter of law against the Levenhagens as initial transferees of the 11609 Property pursuant to Bankruptcy Code § 550(a)(1). The Court held that it could fashion an equitable remedy under Rule 60(b), Fed.R.Civ.P., after considering all of the facts attendant to the Levenhagens' purchase of the property. The good faith of the Levenhagens was therefore still very much at issue in this motion. In addition, the Levenhagens argued that they were not the initial transferees under Section 550; that GFS was the initial transferee and they were an immediate transferee with the right to assert their good faith as a defense to the Trustee's claims. In their Memorandum the Levenhagens argued that "[i]t was GFS that actually had the right to deal with the property and it is undisputed that GFS directed and controlled the money from the transaction."

As of April 2007, when the Court granted the Trustee's Motion for Summary Judgment Against the Levenhagens, the Trustee still was not playing with a full deck of evidence as many of the Withheld Documents had not been produced by Herman Recor. Accordingly, the Court concludes that Herman Recor should reimburse the Trustee's expenses related to this motion

MEMORANDUM DECISION - 45

in the amount of $25,098, which the Court finds reasonable given the significant briefing and factual presentation that was required.

      6.   <u>Out-of-Pocket Expenses for Aborted Depositions</u>.

The Trustee seeks reimbursement for out-of-pocket expenses in the amount of $1,695.43 related to the aborted Levenhagen and Laing depositions on April 2 and April 3, 2007. This amount is reasonable given that the expenses could have been entirely avoided had Herman Recor timely responded to the Trustee's discovery requests and properly advised its clients concerning the depositions.

    E.   <u>The Trustee's Legal Fees Related to the Sanctions Motion</u>.

The Trustee requests reimbursement for his fees incurred in bringing the Sanctions Motion. As of July 15, 2008, when Ms. Moewes filed her Supplemental Declaration, these fees totaled $95,174.50. Herman Recor does not dispute that reasonable fees may be awarded to the Trustee pursuant to Rule 26(g)(3), Fed.R.Civ.P., but argues that the fees the Trustee seeks are not reasonable because they represent more than one-third of the total amount sought by the Trustee.

The billing records for the legal fees sought by the Trustee in this category are contained in the Declaration of Denice Moewes in support of the Trustee's Third Application for fees. That application documents $88,845 in fees incurred as of April 30, 2008. The Court has reviewed the time entries in this category and does not believe the fee request is

MEMORANDUM DECISION - 46

1  unreasonable.  Trustee's counsel was required to sift through

2  boxes of documents and to piece together which documents Herman

3  Recor had at relevant periods of time and which documents were

4  not produced.  The Trustee's attorneys worked with

5  Mr. Levenhagen to recreate the events that took place over the

6  course of the litigation and to document those events in

7  multiple exhibit binders for the Court.  The briefing related

8  to the Sanctions Motion is very significant.  The Court finds

9  that the investment of the Trustee's attorneys' time was

10  necessary to adequately present this complex matter to the

11  Court.

12  Because the Trustee has only documented $88,845 in fees,

13  however, the award is limited to that amount until further

14  billing support for the additional services performed

15  subsequent to April 30, 2008 is provided.

16  **CONCLUSION**

17  For the foregoing reasons, the Court will enter an order in

18  favor of the Trustee requiring reimbursement from Herman Recor

19  for discovery violations and abuses in the amount of

20  $94,514.43, plus legal fees incurred in bringing the Sanctions

21  Motion in the amount of $88,845.  The Trustee may seek

22  additional fees incurred after April 30, 2008 by supplemental

23  motion.

24  Dated this 27th day of October, 2008.

25

26  Karen A. Overstreet
    U.S. Bankruptcy Judge

MEMORANDUM DECISION - 47

| McCarty v. Global, et. Al. | **EXHIBIT A** | |
|---|---|---|
| Sanctions Motion Fee Analysis | | |
| | | |
| Fee Category | | |
| Discovery | Court allowance | Trustee's Request |
| 1/9/2007 | 55.00 | |
| 1/10/2007 | 82.50 | |
| 2/1/2007 | 310.00 | |
| 2/2/2007 | 1,364.00 | |
| 2/21/2007 | 220.00 | |
| 2/22/2007 | 1,045.00 | |
| 2/23/2007 | 357.50 | |
| 2/23/2007 | 62.00 | |
| 10/31/2006 | 52.00 | |
| 11/6/2006 | 52.00 | |
| 11/7/2006 | 885.00 | |
| 11/7/2006 | 884.00 | |
| 11/15/2006 | 1,014.00 | |
| 11/16/2006 | 2,065.00 | |
| 11/16/2006 | 2,288.00 | |
| 12/6/2006 | 100.00 | |
| 12/8/2006 | 546.00 | |
| 3/5/2007 | 907.50 | |
| 3/8/2007 | 165.00 | |
| 3/8/2007 | 150.00 | |
| 3/9/2007 | 852.50 | |
| 3/16/2007 | 82.50 | |
| 3/18/2007 | 330.00 | |
| 3/19/2007 | 412.50 | |
| 3/20/2007 | 130.00 | |
| 3/25/2007 | 400.00 | |
| 3/26/2007 | 192.50 | |
| 3/26/2007 | 27.50 | |
| 3/27/2007 | 247.50 | |
| 4/1/2007 | 1,925.00 | |
| 4/2/2007 | 3,712.50 | |
| 4/2/2007 | 28.00 | |
| 4/2/2007 | 112.50 | |
| 4/2/2007 | 10.50 | |
| 4/4/2007 | 200.00 | |
| 4/5/2007 | 330.00 | |
| 4/6/2007 | 192.50 | |
| 4/13/2007 | 330.00 | |
| 4/18/2007 | 27.50 | |
| 4/23/2007 | 55.00 | |
| 5/1/2007 | 137.50 | |
| 7/25/2007 | 165.00 | |
| 10/23/2007 | 27.50 | |
| 10/26/2007 | 110.00 | |

| | | |
|---|---:|---:|
| 10/29/2007 | 1,485.00 | |
| 10/30/2007 | 1,897.50 | |
| 10/31/2007 | 2,200.00 | |
| Total Discovery | 28,225.50 | 44,608.00 |
| First Motion for Summary Judgment | 32,414.50 | 32,414.50 |
| Second Summary Judgment Motions | 7,081.00 | 7,081.00 |
| Trustee's Motion (vacate order) | 0.00 | 25,968.00 |
| Trustee's Motion vs. Levenhagen | 25,098.00 | 25,098.00 |
| Expenses: aborted depositions | 1,695.43 | 1,695.43 |
| Total Damages | 94,514.43 | 136,864.93 |
| Fees assoc. with Sanctions Motion | 88,845.00 | 95,174.50 |
| Total Court Award | 183,359.43 | |
| Trustee's Request | | 232,039.43 |